8 So.2d 585

**BROWN v. ACE MOTOR CO.**

**6 Div. 903.**

Court of Appeals of Alabama.

April 14, 1942.

Rehearing Denied May 12, 1942.

BRICKEN, Presiding Judge.

Appellant, Gus Brown, sued Ace Motor Company, a corporation, in detinue, claiming a certain Ford Sedan automobile, with the value of the hire or use thereof during the detention from the 3rd day of November, 1941.

In answer to the complaint the defendant plead the general issue, in short by consent, with leave, etc., and also interposed a plea of recoupment for the sum of $18.

The case was tried before the court without a jury, the defendant filing a written request for a special finding of fact. Issue was joined on the complaint and defendant's plea of recoupment. The court below rendered a judgment in favor of the defendant for the sum of $18 and costs, under defendant's plea of recoupment, and from that judgment Gus Brown, plaintiff, brings his appeal to this court.

Upon the trial the plaintiff, Brown, testified in substance, that on November 3, 1941, he left his car, a Ford 1936 Sedan on the Florida short route about 8 miles from Birmingham; that the car wouldn't run on account of motor trouble and that he pushed it off of the main road and left it

there to get some help; and when he got up and claimed the car. Said it had motor back, about five hours later, the State Highway Patrolman was there with a wrecker of the Ace Motor Company; that the State Highway Patrolman asked him why he had left the car and witness told him in the presence of the man driving the wrecker that, "I had motor trouble"; that the Patrolman tested the brakes on witness' car and said, "they are bad, even if the car would run, he would not permit me to drive it on the highway"; that, he, the witness, told the wrecker (Ace Motor Company), "not to take my car," but that the Patrolman said, "Pull it in—it is a dangerous vehicle"; that the Patrolman told witness that he could not drive that car in its condition on the road—"This car has been sitting there for 5 hours or more—it can't run—the brakes are bad and it is a menace to other drivers and you have had reasonable time to do something about it and I want it off this road and I don't mean maybe"; that the wrecker then picked up the front end of the car and pulled it into the garage; that on November 23, 1941, the witness went down to the garage and told them that he wanted his car, and that they said he could have it if he paid $8 for wrecker service, and 50 cents a day for storage; that he told them that he did not order the wrecker and wouldn't pay it; that the car was worth about $100. On cross-examination this witness testified that the car was off the road—off the pavement on the shoulder of the highway; that he didn't pay the bill to Ace Motor Company; that the car couldn't go; that he had not called another wrecker or car to pull him in and didn't tell them that he had or would; that he didn't figure that they had any right to handle his car if it was off the pavement and on the dirt shoulder; that there were no lights on the car and it was late afternoon; that he had not hired a mechanic or wrecker to come out to help him; that he did not have a lantern in the car in case he had to spend the night out there; that the car was about three feet off the paved part but on the dirt shoulder; that he had a rock placed under the rear left tire to hold the car from rolling. This appears to have been all the testimony offered by the plaintiff.

J. O. Fore testified as a witness for the defendant and in substance said: "We received a call from the Highway Police—when we got there—this colored man came

up and claimed the car. Said it had motor trouble and that it had been sitting on the shoulder of the road for several hours. Brown and the police tested the brakes and they were bad. The motor wouldn't run. We did not want to pull the car in when Brown told us he wouldn't pay for services but the police insisted that it was dangerous to leave the car there so near the main highway. The Florida Short Route is a heavily traveled highway and the car or most of it was off the pavement but on the shoulder. Our charges are the usual charges made by other wreckers—one dollar per mile—charging only for one way and 50 cents for 24 hours storage. Our claim against the car is 20 days plus $8.00 wrecker service. Our charges are not based on the type of car but if the car was in a ditch or was in a difficult position and we are put to a lot of trouble and extra help to get it out, we sometimes charge extra. We have the car and pulled it in only upon the insistent instructions of the State Highway Patrol. We claim that Brown owes us $18.00 to November 23, 1941. He has not paid us and refuses to pay and we are asking for a judgment for this amount."

On cross-examination witness Fore testified:

"Well, we were in a tight place—the negro said don't move it—the police said 'Get it out of here, someone may get hurt.' "

The defendant offered Miles Bradford, Jr., as a witness, who testified: "I am the man in charge of the garage. Gus Brown, came to the place in Birmingham on November 23, 1941 and asked for his car. He refused to pay the charges. And then he said the police ought to pay for pulling the car in. I told him that we had been ordered to pull the car. He admitted that the charges were reasonable but said he wouldn't pay a red cent for the services. He stated that a public highway belongs to the public and if the car was hurting nobody it was nobody's business what he did with his car or where he left it. I tested the brakes when the car came in and they were bad and on the 23rd of November. I tested them again while Brown watched and they were bad. He said let the police pay for the bill—they acted smart, so let them pay it."

The court's special finding of the facts is in accord with the above testimony, which was substantially all of the testimony offered upon the trial.

482

This court does not agree with the trial court's interpretation of section 25(a), and (b), Title 36, of the Code of Alabama, 1940, save that we are in accord with the statement of the trial court to the effect that a State Highway Patrolman is. a peace officer.

 Section 25(a), and (b), Title 36, supra, are as follows:

"(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended, or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway. ·

"(b) Whenever any peace officer shall find a vehicle standing upon a highway in violation of the provisions of this section, he is hereby authorized to move such vehicle or require the driver or person in charge of such vehicle to move such vehicle to a position permitted under this section."

The plaintiff testified unequivocally that he pushed his car off of the main road, off of the pavement on to the shoulder of the highway. We find nothing in the testimony of the defendant's witnesses in conflict with this testimony of the plaintiff. The meaning of the Statute is that when an automobile driver, along a public highway is compelled to stop on the highway because of a defective condition of his automobile, he must not leave the same standing upon the paved, or improved, or main traveled portion on the highway, but he must get the same off of the traveled portion of the highway on to the shoulders or side thereof. When the automobile owner gets his automobile off of the paved, or improved, or main traveled portion of the highway it is not unlawful for him to leave the automo-

bile on the shoulders or side of the road if he has left a clear and unobstructed width of not less than 15 feet upon the main traveled portion of the highway, opposite the standing vehicle, and if there is a clear view of such vehicle from a distance of 200 feet in each direction upon such highway.

 Furthermore, subdivision (b) of said section 25 does not give a peace officer who finds a vehicle standing upon a highway in violation of section 25, Title 36, of the Code, the right to send off for a garageman, or to employ wrecker service, to pull the car to some private garage, but he, in such event, is only authorized to move such vehicle to a position permitted under the provisions of section 25(a), or to require the driver or person in charge of such vehicle to move the same to a position permitted under· said section.

 Of course, the provisions of section 46 of Title 36 of the Code, requiring lights to be placed on parked vehicles ought to be observed, and any person failing to do so is guilty of a misdemeanor, for which a criminal prosecution would lie.

 It is the opinion and judgment of this court, that the judgment of the trial court was contrary to the law and the evidence. We find no legal authority whatever in a Highway Patrolman, under the law of this State, that empowers him to employ wrecker service and to contract for the use of garage storage room to be charged to the owner of a disabled automobile standing upon the shoulders, or side, of a highway, and unable to run because of defective brakes.

 The car of plaintiff was moved by the defendant without legal authority or justification and over the protest of the plaintiff. Under these circumstances it is our opinion that the defendant was without legal right or authority to pull the disabled automobile to its garage in Birmingham, and store the same and charge plaintiff with the cost thereof.

We are of the opinion that the trial court erred in rendering its judgment in favor of the defendant. Said judgment is hereby reversed, and this cause is remanded to the trial court for further proceedings in accord with this opinion.

. Reversed and remanded.