McBRIDE, Judge.
On May 16, 1954, Richard Monroe Smith was arrested by officers of the Federal Bureau of Investigation (hereinafter called FBI) in connection with an alleged violation of certain laws of the United States and was incarcerated in the. Parish Prison at New Orleans. On the day of his arrest and while in the Parish Prison, Smith transferred title to two certain automobiles by written assignments to Augustus G. Williams, who is an attorney at law practicing at this bar. These vehicles are a 1952 Ford and a 1954 Oldsmobile.
On the same day agents of the FBI seized the said automobiles as evidence in the case against Richard Monroe Smith. Whether this seizure was made before or after Smith transferred ownership to Williams is not shown. Plowever, the cars were taken by an agent of the FBI to the garage of Parking Service, Inc., and a contract was made with the corporation for the storage of the two cars in question. The evidence shows that Parking Service, Inc., was engaged in the business of parking automobiles “day to day” or “in and out service” and did not undertake keeping vehicles as “dead storage.” The latter term, as we understand it, means that the automobile is to remain for an extended period of time without being made use of during the storage. The charges usually made in connection with “dead storage” are considerably less than for “day to day” service. The terms of the contract were that Parking Service, Inc., would store each automobile at the rate of $1.50 per day (24 hours), which is the same charge it makes for “day to day” or “in and out” service.
On March 29, 1955, some nine and one-half months after the cars had been placed in its garage, Parking Service, Inc., sent a letter to the Public Administrator for the Parish of Orleans making formal demand upon him to take and administer as abandoned automobiles three certain described automobiles (two being the cars Williams *54 had acquired from Smith) pursuant to the provisions of LSA-R.S. 32:521-32:524. Parking Service, Inc., also demanded that the Public Administrator recognize the amount due it for storage and its ware-housemen’s lien on the cars. Acting upon such request, the Public Administrator petitioned for appointment as administrator of the three automobiles “as abandoned property by their owners in storage for over six months.” On May 4, 1955, W. S. Benedict, the Public Administrator, qualified as administrator of the automobiles, and he immediately petitioned the court for a public sale which was ordered to be held on May 25, 1955, by a local auctioneer under the direction of the Public Administrator.
A few hours before the sale, Augustus G. Williams filed an intervention in the proceedings claiming to be the owner of the 1952 Ford and the 1954 Oldsmobile, his allegation being that he had acquired title to these vehicles from Richard Monroe Smith. Williams alleged, among other things, that he had notified Parking Service, Inc., of his ownership of the automobiles and had at all times protested, but to no avail, that the detention of the automobiles by Parking Service, Inc., was effectuated without his consent and against his will, and that he is not in any wise indebted for any storage charges, and further that the automobiles were never abandoned by him and the Public Administrator has no right to administer or sell the vehicles. He prayed for a temporary restraining order enjoining the public sale of the two automobiles; that the auctioneer, Parking Service, Inc., and the Public Administrator be ordered to show cause why a preliminary injunction should not issue enjoining them from undertaking to enforce any “storage lien” against petitioner’s automobiles until the further orders of the court and from offering the automobiles for sale in an attempt to enforce such lien; he further prayed that there be citation on said three defendants and that ultimately there be judgment in his favor decreeing that thé automobiles described in the petition are free from any storage charges or liens therefor and that said automobiles be delivered forthwith to him; that the preliminary injunction be made permanent.
Parking Service, Inc., answered Williams’ intervention claiming garage charges in the amount of $1,114.40, plus $500 attorney’s fees for defending the intervention. Its prayer is that the intervention be dismissed and that it have judgment for $1,614.40 with recognition of its lien on the automobiles.
After a hearing, there was judgment rendered recognizing Augustus G. Williams to be the owner of the two automobiles; the judgment further recognized that there was due the Public Administrator the statutory amount of his commission and costs; Parking Service, Inc., was recognized as having a lien on the automobiles for storage charges to the extent of $635.96; the automobiles were ordered to be sold at public auction by the Civil Sheriff for the Parish of Orleans, and that out of the proceeds of the sale the charges of the Public Administrator be first paid and then the lien of Parking Service, Inc., be satisfied, and that whatever balance was left be paid over to Augustus G. Williams after deducting all costs of court in the proceedings. Williams appealed from the judgment except insofar as it recognized his ownership of the two vehicles.
Parking Service, Inc., answered the appeal praying that the amount of its lien be increased to $1,614.40, plus whatever storage charges may accrue during the pendency of this case.
All parties to the suit have seen fit to consider the judgment rendered below as a definitive judgment, and we shall so consider it.
Parking Service, Inc., assails Williams’ ownership of the two automobiles, but the question of ownership of the cars is no longer an issue in the case. The judgment recognized Williams as the rightful owner, and as Parking Service, Inc., in its answer to the appeal makes no complaint of that portion of the judgment, to that extent the judgment is final.
The record indicates that up to the present time Richard Monroe Smith has never *55 been brought to trial in the United States District Court. But for some reason or other, about February 10, 1955, the United States Attorney saw fit to authorize the release of the automobiles.
We cannot understand under what theory of law Parking Service, Inc., claims to have a garagemen’s lien on the two vehicles. On the day after they had been taken in charge by the FBI and placed in the garage, the attorney for Williams made demand on Parking Service, Inc., for release of the automobiles, which was refused on the ground that they were held for the account of the FBI. Parking Service, Inc., only agreed to surrender the automobiles to Williams about February 10, 1955, when the United States Attorney authorized the release, and then only upon the condition that Williams would satisfy the bill for accrued storage charges which he refused to pay.
The owner of the cars neither placed them in the garage nor consented to their storage, and as there was no privity of contract whatever as between Williams and Parking Service, Inc., he is not liable for the garage expenses. Parking Service, Inc., has no lien for storage charges on the basis of the contract with the FBI against which Williams always made protest. See Pollard v. Borneman, 47 S.D. 622, 201 N.W. 525, 36 A.L.R. 954; Brown v. Ace Motor Co., 30 Ala.App. 479, 8 So.2d 585.
In support of its claim for a privilege on the vehicles, the garage owner specifically relies on Arts. 3224, 3225 and 3226, LSA-C.C., which read as follows:
“Art. 3224. He who, having in his possession the property of another, whether in deposit or on loan or otherwise, has been obliged to incur any expense for its preservation, acquires on this property two species of rights.
“Art. 3225. Against the owner of the thing, his right is in the nature of that of pledge, by virtue of which he may retain the thing until the expenses, -which he has incurred, are repaid.
“He possesses this qualified right of pledge, even against the creditors of the owner, if they seek to have the thing sold. He may refuse to restore it, unless they either refund his advance, or give him security that the thing shall fetch a sufficient price for that purpose.
“Art. 3226. Finally, he who has incurred these expenses has a privilege against these same creditors, by virtue of which he has preference over them out of the price of the thing sold, for the amount of such necessary charges as he shall have incurred for its preservation. This is the privilege in question in the present paragraph.”
We do not think that these codal articles have any application in the case. We hive not been cited to any provision of the law, and we know of none, which authorized the agents of the FBI to store the two cars taken by them as evidence at the expense of the owner without his consent thereto. The cited articles of the Code are based on the principle of the preservation of the thing, but this does not mean that an unauthorized person may make a contract with another for the storage of property at a higher than usual rate, not only without the owner’s consent, but over his vehement protests, under the guise of “preserving” the property.
Under the circumstances, it necessarily follows that the Public Administrator has not the legal right to “administer” the 1952 Ford and the 1954 Oldsmobile “as vacant estates and as estates of unknown owners” under the provisions of LSA-R.S. 32:521-32:524.
It is therefore ordered, adjudged and decreed that the judgment appealed from, except insofar as it recognizes Augustus G. Williams as the sole and only owner of the two automobiles in question, be and the same is hereby avoided and reversed, and the judgment is now amended so as to provide that the said automobiles be delivered to Augustus G. Williams free and clear of any storage charges or liens, and as thus amended it is affirmed.
*56 Parking Service, Inc., is cast for its own costs and the costs expended by Augustus G. Williams, including the costs of this appeal.
Reversed in part; amended and affirmed in part.